IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

FILED
2023 DEC 12 P 1:28

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. INGRID DE LA FUENTE<br><br>*Plaintiffs,*<br><br>v.<br><br>MADISON SPRINGFIELD, INC. (D/B/A SHORT BOAT MERGER, SUB, INC.)<br><br>Address:<br>700 Lavaca Street<br>Austin, Texas 78701<br><br>Registered Agent:<br>Corporation Service Company<br>211 E. 7th Street, Suite 620<br>Austin, Texas 78701<br><br>MADISON SPRINGFIELD, INC. (D/B/A PREMISE)<br><br>Address:<br>700 Lavaca Street<br>Austin, Texas 78701<br><br>Registered Agent:<br>Corporation Service Company<br>211 E. 7th Street, Suite 620<br>Austin, Texas 78701<br><br>MADISON SPRINGFIELD, INC. (D/B/A IKAIKA, INC.)<br><br>Address:<br>700 Lavaca Street<br>Austin, Texas 78701<br><br>Registered Agent: | Civil Action No. 1:23-CV-1693-LMB/LRV<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729** *et seq.*<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2).**<br><br>**JURY DEMAND** |

1

| |
|---|
| Corporation Service Company<br>211 E. 7th Street, Suite 620<br>Austin, Texas 78701<br><br>AND<br><br>TIMOTHY RIESEN<br><br>Address:<br>1075 Bogey Lane<br>Longboat Key, Florida 34228<br><br>*Defendants.* |

## COMPLAINT

## INTRODUCTION

1. *Qui tam* Relator Ingrid de la Fuente ("Relator"), by and through undersigned counsel, individually and on behalf of the United States of America files this Complaint against Madison Springfield, Inc. ("MSI") and its then-owner and Chief Executive Officer, Timothy Riesen, to recover damages, penalties, and attorneys' fees and costs for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA").

2. MSI conducts primary data collection work in foreign countries for government agencies.

3. MSI contracted with a government agency for a Cost-Plus Fixed Fee (CPFF) contract. Under the CPFF contract were 18 different projects, to include the Beowulf project, which involved quantitative and qualitative data collection in a foreign country.

4. MSI's Chief Executive Officer Tim Riesen subcontracted with International Advisory Services ("IAS") to conduct the data collection and analysis for Beowulf; IAS billed MSI for its work based on how much of the project IAS completed each month.

5. IAS's co-owners, who are non-U.S. citizens were also promised twenty-five percent ownership of MSI, a fact that was not disclosed to the United States government in MSI's Foreign Ownership, Control, or Influence reporting.

6. IAS quoted MSI that it would cost $2,000,000 to complete the requested work for the Beowulf project.

7. In MSI's cost proposal to the government, Riesen inflated this amount and estimated it would cost about $3,500,000 in subcontract costs.

8. During IAS' work under the Beowulf project, IAS never submitted invoices to MSI for its work. Riesen prepared invoices with IAS' name and logo for accounting purposes as records. As IAS estimated the cost of the work to Riesen at the proposal stage, and it billed MSI $2,000,000 in sub-contractor costs under the Beowulf project.

9. MSI paid IAS directly for its work under the Beowulf project.

10. When Riesen billed the United States government for IAS' work as a subcontractor, Riesen created new invoices to the United States government with fake time sheet data which requested reimbursement from the government for $3,500,000 for subcontractor costs.

11. The government paid $3,500,000 for subcontractor costs to MSI.

12. MSI paid IAS $2,260,000 for work performed on the Beowulf project.

13. MSI was only entitled to bill the government for incurred costs under the CPFF type contract.

14. MSI engaged in similar behavior for all eighteen projects under this same contract with the governmental agency.

15. MSI also engaged in similar behavior under five projects under an indefinite delivery, indefinite quantity (IDIQ) contract the same agency entered into with MSI in 2019.

16. As will be laid out in more detail below, by overbilling the United States for its services, MSI submitted false claims for payment to the United States government, thereby violating the FCA, 31 U.S.C. § 3729(a)(1)(A).

17. Similarly, by creating false invoices and timesheets to support these false claims, MSI also violated 31 U.S.C. § 3729(a)(1)(B).

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action arises under the False Claims Act as amended at 31 U.S.C. §§ 3729–3733.

19. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3729(a) because they transact business and committed acts prescribed by the FCA within this judicial district.

20. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. §§ 1391 and 1395(a) because Defendants committed violations of the FCA in this judicial district.

21. This action is not based on public disclosure. This action is based on information that is within the direct and independent knowledge of the Relator that she acquired during and after her employment with MSI.

22. Pursuant to 31 U.S.C. § 3730(b)(2), Relator has provided the Government with a copy of this Complaint and a written disclosure of substantially all material, evidence, and information in her possession.

## THE PARTIES

*Ingrid de la Fuente*

23. Relator Ingrid de la Fuente lives in New Port Richey, Florida.

24. Relator started working at MSI in 2013 as a consultant.

25. Relator started working as a W-2 employee at MSI on January 1, 2014.

26. In December 2014, Relator was promoted to President of MSI.

27. As MSI's President, Relator oversaw all accounting, human resources, budgeting, and other corporate functions, Relator also led business development and capture activities for the firm and was the Program Manager for all work in support of the United States government agency that the Beowulf project was under.

28. While Relator was the main interface between MSI and the client-agency, Relator was never responsible for subcontractor timesheets or cost negotiations with the subcontractor for any project of the projects on the CPFF contract. Riesen managed these tasks alone.

29. Relator resigned from MSI on May 13, 2022.

*Madison Springfield, Inc.*

30. MSI was created in 2012 by Riesen, and it is headquartered in Texas.

31. MSI engages in primary data collection work by using indigenous field researchers to, inter alia, collect quantitative and qualitative data in foreign countries.

32. MSI's field researchers work abroad in support of client requirements.

33. MSI's work is conducted for governmental agencies.

34. Tim Riesen is MSI's Chief Executive Officer.

35. In or about May or June 2022, Premise Data Corporation purchased MSI using a reverse triangular merger. The details of the acquisition are not publicly disclosed, and most

employees and even some of its United States government customers are unaware of the acquisition.

36. MSI still operates as MSI obtaining contracts in its own name.

**OVERVIEW OF APPLICABLE LAWS AND REGULATIONS**

*False Claims Act*

37. The FCA, 31 U.S.C. § 3729(a)(1)(A), makes knowingly presenting or causing to be presented to the United States any false or fraudulent claim for payment a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of $13,508-25,018 per claim.

38. The FCA, 31 U.S.C. § 3729(a)(1)(B), makes knowingly making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the government a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of $13,508-25,018 per claim.

39. In the Fourth Circuit, Relators successfully state viable claims under the FCA where they "allege sufficient facts by which the Court could plausibly infer that (1) Defendant[ ] made false statements or engaged in a fraudulent course of conduct; (2) with the requisite knowledge; (3) the statements or conduct was material; and (4) caused the government to pay out money or to forfeit monies due on a 'claim.'" *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 186 (D. Md. 2019) (citing *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014)).

*Federal Acquisition Regulation*

40. The Federal Acquisition Regulations ("FAR") are a set of regulations designed to guide government procurement and contracting.

41. The FAR is binding on all executive agencies. FAR 1.101.

42. In part, the FAR provides that a "Contractor shall not include [in its invoice to the government] . . . [p]ayments made or amounts payable to subcontractors or supplies, except for completed work." 48 C.F.R. § 52.232-16(a)(4)(iv)(A).

43. FAR subpart 16.3 also requires that cost-reimbursable contracts only allow contractors to bill for incurred expenses under a contract.

*Foreign Ownership, Control, or Influence*

44. Entities under foreign ownership, control, or influence (FOCI) must complete a form to disclose when an entity is under FOCI. 32 C.F.R § 2004.34(b).

45. An entity is considered to be under FOCI when any person who is not a United States citizen or national has the power to direct or decide matters affecting the entity's management. *Id.* § 2004.34(b)(1). This is often found when foreign nationals own portions of the entity. *Id.* § 2004.34(b)(2).

46. A primary consideration when an entity is under FOCI is the entity's access to the protection of classified information. *Id.* § 117.11(a)(2).

47. When considering if an applicant is under FOCI, the entity's access to classified information can depend on a variety of factors, such as the type and sensitivity of the information the entity accesses. *Id.* § 117.11(b)(4).

*Beowulf Project*

48. In or about August 2019, MSI started working on the Beowulf project for the United States government, which consisted of data collection in a foreign country.

49. Under the project, MSI was required to submit supporting information, including timesheets, with each invoice to the United States government.

50. This project was internally referred to as the Beowulf project at MSI.

51. The project had a price ceiling of $3,500,000 (without general and administrative expenses or fees) for all sub-contractor work.

52. The Beowulf project was one of eighteen projects completed under the same contract for the United States government.

53. MSI similarly had other contracts with the United States government. Notably, in 2019, MSI was awarded an IDIQ contract with the same government agency as the Beowulf project.

54. MSI completed multiple projects for the United States government under the IDIQ contract.

## FACTUAL ALLEGATIONS

55. A United States government agency contracted with MSI to complete work.

56. MSI and this client-agency worked together on various data collection and analysis projects from 2016 through the present.

57. One data collection and analysis project had a $3,500,000 subcontractor budget (general and administrative expenses or fees) and required MSI to complete quantitative and qualitative data collection and analysis project for ten (10) locations.

58. Internally, MSI referred to this project as the Beowulf project.

8

59. MSI completed work under the Beowulf project between August 2019-September 2020.

60. In total, MSI billed $4,497.786.77 under the Beowulf project.

61. MSI invoiced the United States government under the Beowulf project for work completed by program managers, research managers, analysts, as well as general and administrative (G&A), travel and overhead costs.

62. MSI subcontracted with IAS to conduct the field research under the Beowulf project.

63. IAS informed MSI that it would cost approximately $200,000 per each of the ten locations, for a total cost of $2 million, to complete the requested work.

64. IAS did not submit timesheets for its personnel on the Beowulf project. IAS did not otherwise submit any information to MSI about how many hours its researchers worked.

65. IAS had between 100-120 field researchers working on the Beowulf project.

66. In total, IAS requested MSI pay it $2,000,000 for its work under the Beowulf project.

67. Riesen created new invoices to support claims for payment to the United States government. The falsely created invoices assign a cost of $50 per hour per researcher. MSI's invoices included general and administrative costs plus fee in addition to the $50 per hour in subcontractor labor.

68. These invoices had "International Advisory Services" at the top of the invoice to make it appear like it came from the subcontractor.

69. These invoices were not ultimately submitted to the government to support billing for IAS' time.

70. Riesen also created timesheets to accompany the claims to the government which allegedly showed how many hours a field researcher would work each month and the total hours worked by IAS. Riesen made these numbers up.

71. For example, on April 1, 2020, Riesen created a timesheet to supported MSI's invoice to the government for $540,000.00.

72. The spreadsheet showed that only forty field researchers allegedly worked under the Beowulf project.

73. Each field researcher worked the same six days a week for ten hours each day.

74. This same work schedule was replicated on other documents that were submitted with invoices for at least October 2019 and February 2020 as well.

75. Riesen submitted these timesheets to the government to support its invoices for labor.

76. Riesen noticeably did not include a logo from the International Advisory Services on the supporting timesheets.

77. Between August 2019-April 2020, MSI paid IAS $2,260,000 under the Beowulf project.

78. However, MSI billed the federal government the full $3,500,000 subcontractor amount.

79. MSI billed the government $80,000 in subcontracting costs for August 2019.

80. MSI billed the government $416,000 in subcontracting costs for September 2019.

81. MSI billed the government $432,000 in subcontracting costs for October 2019.

82. MSI billed the government $400,000 in subcontracting costs for November 2019.

83. MSI billed the government $432,000 in subcontracting costs for December 2019.

84. MSI billed the government $500,000 in subcontracting costs for January 2020.

85. MSI billed the government $500,000 in subcontracting costs for February 2020.

86. MSI billed the government $540,000 in subcontracting costs for March 2020.

87. MSI billed the government $200,000 in subcontracting costs for April 2020.

88. At some point during IAS' work on the Beowulf project, Riesen informed IAS owner, and point of contact on the Beowulf project, Alexis Everington that the United States government client had "overpaid" MSI for the project for a total amount of $3.5 million.

89. In or about August or September 2022, Relator spoke with Everington regarding the Beowulf project.

90. Everington informed Relator that Riesen did not pay IAS $3,500,00 for the Beowulf project, but only paid $2,260,000.

91. IAS was only owed $2,000,000 for its work under the project.

92. Relator was unaware of MSI's fraudulent billing prior to Everington alerting her of it as Relator believed that the subcontractor costs being submitted by Riesen were accurate and properly reflected the work completed by IAS.

93. Everington informed Relator that MSI's subcontractor IAS did not track its man hours and instead only received payment for progress and delivery.

94. Everington informed Relator that Riesen never asked him how many man hours were being completed on the Beowulf project.

95. However, Riesen submitted monthly bills to the government in man hours despite there being no way for Riesen to know how many man hours IAS completed.

96. After the Beowulf project ended, Riesen sent a text message to Everington expressing that there was "surplus $$$ from project B[eowulf]."

97. To Relator's knowledge, Defendants never took any steps to repay the United States government for any unearned payments on the Beowulf project.

98. MSI and Riesen similarly inflated invoices and fabricated time sheets under, at least, eighteen other projects under this contract and five other projects under an IDIQ contract with the same governmental agency.

99. Further, as outlined above, MSI is partially owned by Everington and White, who are non-U.S. citizens. Given Everington and White's partial ownership of MSI, MSI should have revealed its partial ownership, control, or influence by a foreign entity when bidding for United States government contract.

100. MSI never revealed to the United States government that it had foreign ownership, control, or influence, and went great lengths to keep IAS's name concealed from its United States government customers. For example, as outlined above, Riesen created false invoices with IAS' logo on the document, but did not provide these invoices to the government, Riesen only provided false timesheets which named the field researchers names, but not their affiliation with IAS.

101. Given the work MSI was doing in support of United States national security interests, the United States may not have awarded MSI its contract, or specific projects under its contracts if it had known of MSI's ownership, control, or influence.

## COUNT I
## Violation of The False Claims Act
## 31 U.S.C. § 3729(a)(1)(A)
## Knowingly Submitting False Claims for Payment

102. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

103. The False Claims Act imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

104. The FAR requires that government contractors only bill for work that was actually completed under a contract. *See* 48 C.F.R. § 52.232-16(a)(4)(iv)(A); FAR sub-part 16.3.

105. However, from approximately August 2019 through approximately April 2020, Riesen, on behalf of MSI, intentionally inflated the amount of money that was proposed and expended by MSI subcontractor, IAS on the Beowulf project and billed the government for work that was not completed.

106. In doing so, Defendants obtained $1,500,000 in government payments that was not owed to MSI under the Beowulf project.

107. Defendants also submitted nine separate false claims for payment, one for each month Defendants billed the United States government for the Beowulf project.

108. Defendants submitted additional false claims for payment under twenty-three other projects under other contracts and projects with the same United States agency.

109. Each of these projects required MSI to submit information corroborating all labor billing, but MSI never requested IAS submit timesheets for their work.

110. Defendants acted with knowledge that Riesen was submitting false claims as evidenced by the fact that Riesen, on behalf of MSI, intentionally created fake invoices from IAS and created false spreadsheets to support the invoice when billing the government for subcontractor costs.

111. Additionally, Defendants omitted material information from the United States government about its foreign ownership, control, or influence. If the United States government

had known about MSI's foreign ownership, control, or influence, it may not have awarded MSI the CPFF or IDIQ contract, or specific projected under the CPFF or IDIQ contracts.

112. These new documents were created with the specific intent to defraud the government.

113. These false claims were material to the government's decision to pay the invoices because had the government known that MSI had only worked the equivalent of $2,000,000 under the contract, it would not have paid $3,500,000.

114. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

### COUNT II
### Violation of The False Claims Act
### 31 U.S.C. § 3729(a)(1)(B)
### Knowingly Making False Records and Statements Material to a False Claim

115. Relator incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

116. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

117. When effectuating MSI's fraudulent scheme, Riesen created false invoices for payment submitted to the government. The invoices were not submitted to the government but maintained for MSI's records. MSI billed the government using invoices that included these subcontract expenses and other money owed under the project.

118. Riesen also created fake timesheet reporting data that were used to support these false invoices to the government. These fake timesheets were submitted to the government to support its request for labor expenses.

119. These documents were created to make it appear that MSI was owed more money by the government than it actually was and triggered the government's decision to reimburse MSI for its work under the Beowulf contract.

120. Defendants engaged in similar conduct of falsifying fake timesheets under at least twenty-three other projects with the United States government.

121. As such, these documents were false records made to support Defendants' false claims for payment.

122. Defendants acted with knowledge that Riesen was making false records in support of false claims to the government as evidenced by the fact that Riesen intentionally recreated new invoices allegedly detailing IAS' work and created false spreadsheets to support the invoices.

123. These new documents were created with the specific intent to defraud the government.

124. These false claims were material to the government's decision to pay the invoices because had the government known that MSI had only worked the equivalent of $2,000,000 under the contract, it would not have paid $3,500,000.

125. Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty per false claim.

## PRAYER FOR RELIEF

Wherefore, Relator de la Fuente, acting on behalf and in the name of the United States of America and on her own behalf, prays that judgment will be entered against Defendants, for violations of 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B) as follows:

a. This Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Defendants' actions plus the maximum civil penalties for each act in violation of 31 U.S.C. § 3729;

b. In favor of Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by Relator;

c. That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

d. That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

e. That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

f. For all costs of the civil action;

g. That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

h. That the United States and the Relator be awarded prejudgment and post judgment interest;

i. In favor of Relator and the United States for further relief as this Court deems to be just and equitable; and

j. Such other relief as this Court deems appropriate.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a jury trial.

Dated: December 11, 2023

Respectfully submitted,

*/s/ Janel Quinn*
Janel Quinn, Esq. (VA Bar No. 89503)
R. Scott Oswald, Esq. (VA Bar No. 41770)
The Employment Law Group, P.C.
1717 K St. NW, Suite 1110
Washington, DC 20006
202-261-2813
soswald@employmentlawgroup.com
jquinn@employmentlawgroup.com

*Counsel for Qui Tam Relator*